UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————x

JULIA RAMSAY-NOBLES,

        Plaintiff,

 -against-                                                  16 Civ. 5778 (CM)

WILLIAM KEYSER et al.,

        Defendants.

————————————————————————x

### DECISION ON PLAINTIFF'S MOTIONS IN LIMINE

McMahon, C.J.:

The court, for its decision on Plaintiff's motions in limine:

*Motion in Limine #1*

Plaintiff seeks to exclude evidence about the nature of her decedent's crimes of conviction. Defendants Superintendent Keyser and Deputy Superintendent Burnett ("Superintendent Defendants") ask this court to reserve judgment because, while they do not intend to affirmatively introduce evidence of Karl Taylor's criminal conviction, it could become relevant – for example, they argue, if Plaintiff asserts that Karl Taylor was a "target" because he had been convicted of a sexual crime. Should that scenario develop, we will of course deal with it – which is to say, if Plaintiff opens the door, we will discuss what Defendants can say about his crime of conviction. But absent Plaintiff's opening the door, the motion is GRANTED.

Plaintiff also moves to preclude any mention of her decedent's disciplinary history. The Superintendent Defendants make no argument in opposition, and merely ask this court to reserve judgment in case this information becomes relevant.[1] That is not an appropriate ground for opposition; if something comes up during the trial, I can always revisit this ruling, but there is no reason not to rule on the basic concept now.

The C.O. Defendants oppose on the ground that (I assume) particular incidents of disciplinary history may be relevant to psychiatric evidence; they suggest that a limiting charge would be appropriate. The C.O. Defendants are no more specific than this; they do not identify which incidents of disciplinary history are relevant to psychiatric testimony they seek to introduce or connect those specific incidents to anything that is relevant to the issue to be tried, which is

---

[1] This vague one-sentence request to reserve judgment in the event information becomes relevant is the only point the
   Superintendent Defendants raise in opposition to Plaintiff's first, third, fourth, and fifth in limine motions.

1

what happened to Karl Taylor on the day he died and whether Defendants have any justification for anything they may have done to him. I fail to see the relevance of his prior disciplinary incidents, and defense counsel certainly has not explained any to me.

Since Defendants have failed to provide the court with a basis for denying the motion, the motion is GRANTED. By now, counsel for Defendants should be aware that this court is interested in substantive responses, not broad one-sentence statements that convey no information. The time for responding to the motions in limine was extended, at defense counsel's request, until January 7; the court will not defer ruling on this matter simply because Defendants responded to the motion in a purely perfunctory manner.

*Motion in Limine #2*

Motion in limine #2 argues that the prior criminal history and prison disciplinary records of inmates who will testify about the events that occurred on the day Karl Taylor died should not be used for impeachment. The motion is granted in part, denied in part and reserved in part, because the parties have not provided the court with sufficient information to allow the court to evaluate the admissibility of certain convictions.

It is well settled that evidence of a witness's tendency to testify truthfully is admissible, even if that evidence takes the form of a crime. This works as follows:

Fed. R. Evid. 609(a)(1): Any crime punishable by death or imprisonment for more than one year (which is to say, a felony) must be admitted for impeachment purposes, subject to the "more probative than prejudicial" test of Rule 403, as long as the witness is not a defendant. Motion #2 is addressed solely to testifying non-defendants, so there exists a presumption that the information called for under the rule – the name of their crime, the date of conviction and the sentence imposed, *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005) – relating to all of their felony convictions is admissible for attacking their character for truthfulness. Any felony conviction that is not automatically admissible for impeachment purposes under Fed. R. Evid. 609(a)(2) must, therefore, be analyzed under Fed. R. Evid. 403 to see whether its probative value as impeachment evidence is outweighed by some prejudicial factor that would preclude its use for impeachment.

Fed R. Evid. 609(a)(2): Any crime, regardless of whether it is or is not a felony, must be admitted for impeachment purposes if the court can readily determine that establishing the elements of the crime required proving a "dishonest act or false statement." The phrase "**dishonest act or false statement**" as used in Rule 609(b) means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit or untruthfulness. This differs from a layman's understanding of the words "dishonest act."

Fed. R. Evid. 609(b): The rules just described do not apply if more than 10 years have passed since the witness' conviction or release from confinement, whichever is later. In that case, the conviction is considered "stale," and evidence of the crime is admissible for impeachment

purposes only if its probative value, supported by specific facts and circumstances, *substantially* outweighs its prejudicial effects.

The eight non-party witnesses who will be called to testify about the events surrounding Karl Taylor's death were all incarcerated (some still are), and the jury will be aware that they were inmates at the time of the events about which they are testifying. The issue presented by the motion is whether the defense can impeach them with evidence about the crimes that brought them into prison.

As a general rule in the Second Circuit, the violent crimes of robbery, burglary and assault are not deemed to fall within the meaning of the phrase "dishonest act or false statement" as used in Rule 609(a)(2). *United States v. Estrada*, 430 F.3d 606, 614 (2d Cir. 2005); *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977). So while it is certainly the case that robberies and burglaries involve "dishonesty" as that term might be understood by non-lawyers, they do not involve the kind of false statements, frauds, false pretenses, deceit or untruthfulness that bring them within Rule 609(a)(2). Even some larcenies do not qualify as *crimen falsi*; the general rule is that a court must examine the underlying facts of the larceny, outside the hearing of the jury, in order to decide whether the crime can be used to impeach pursuant to Rule 609(b)(2). *Estrada*, *supra*, 430 F.3d at 614.

However, robberies and burglaries – and indeed, any other type of felony – not only may, but *must* be allowed to be used to impeach a non-party witness's credibility unless their probative value for that purpose is substantially outweighed by the danger of: unfair prejudice, confusing the issues, undue delay, misleading the jury, wasting time or needlessly presenting cumulative evidence. Fed. R. Evid. 609(a)(1), 403. That is because all felonies "are at least somewhat probative of a witness's propensity to testify truthfully." *Estrada*, *supra*, 430 F.3d at 617. For our purposes, the only relevant Rule 403 consideration is the prejudicial value of the evidence of conviction, since the simple act of asking a witness whether and when he was convicted of a particular crime, and what punishment he received therefor, does not implicate such things as undue delay or juror confusion.

The trial court must evaluate information about the witness's prior convictions in order to determine whether the presumption of admissibility in Rule 609(a)(1) is overcome by Rule 403 "unfair prejudice." *Estrada, supra*, cited by both sides but discussed in depth by neither, stands for the proposition that a trial judge commits error if s/he refuses to allow a party to impeach a non-party witness with felonies that are not *crimen falsi* without weighing the presumed probative value of those convictions against their potential for unfair prejudice. Put otherwise, felonies that cannot automatically be used for impeachment purposes because they are not *crimen falsi* within the meaning of Rule 609(a)(2) are nonetheless perfectly admissible for impeachment purposes pursuant to Rule 609(a)(1) – and, indeed, must be admitted for that purpose – unless Rule 403 counsels otherwise.

Therefore, as instructed by the Second Circuit in *Estrada*, trial judges must "undertake an individualized balancing analysis under Rule 609(a)(1) before excluding evidence of the statutory name of a witness's crime. . . . [and] the balancing requirement . . . presumes that some details of a witness's felony convictions will be considered." *Estrada*, *supra*, 430 F.3d at 616. Additionally,

"District courts, in applying Rule 609(a)(1), are thus required to examine which of a witness's crimes have elements relevant to veracity and honesty and which do not." *Id*. at 617. The Circuit has adopted a "rule of thumb" that crimes that reflect on a person's integrity – such as those involving deceit, fraud and theft – bear on honesty, while those involving acts of violence – which may be impulsive – are less likely to do so. *See id*. at 617–18. It listed several examples of each type of crime: crimes involving theft, evasion of responsibility, abuse of trust, and even planning or preparation (*e.g.*, drug importation) tend toward the "impacts credibility" end of a scale; street drug sales, assaults and acts of violence are less so, unless they involve planning or preparation. *See id*. at 618. And acts of wanton violence or sexual immorality, while bearing on truthfulness simply by virtue of their seriousness, are the types of acts that may run afoul of Rule 403's "undue prejudice" standard, since they say little about credibility while causing the average juror to be unduly influenced by their sheer awfulness. *See id*.

With this in mind, we turn to the proposed witnesses and their past crimes:

Raymond Bird:

*Sexual abuse in the first degree*: This crime falls within the 10 year prohibition of Rule 609(b), so it can only be used for impeachment purposes if its probative value substantially outweighs its prejudicial value. In fact, precisely the opposite is true: the prejudicial value of a sex crime substantially outweighs any probative value it might have (which is, by the way, de minimis) relating to the credibility of the witness. It may not be referred to during the trial.

*Attempted sale of contraband*: Bird was convicted of this crime in 2002 and was released from prison in 2010. The crime, while not falling within Rule 609(b), is remote in time, which diminishes its probative value. However, keeping in mind the admonition of the Second Circuit in *Estrada*, I cannot say, without knowing more about the details of this crime – including what the contraband was, to whom and how it was sold, and whether planning was involved in the perpetration of the crime – whether this particular crime's probative value as impeachment (simply because it is a felony) is outweighed by its prejudicial value (which would not appear to be terribly great). The burden is on the proponent of the witness to advise the court about the details of this crime so that proper Rule 609(a)(1) analysis can be undertaken; I assume we will do this outside the presence of the jury before the witness testifies, since it is unlikely that the witness will be in communication with Plaintiff's counsel until just before he gets on the stand. My initial inclination is to rule that sale of something identified as contraband would be admissible under Rule 609(a)(1), but I will defer a final ruling until I hear more about the incident.

*Third degree burglary*: Burglary is the quintessential example of a crime that the Second Circuit recognizes as (1) not automatically admissible for impeachment purposes under Rule 609(a)(2), because it is not a *crimen falsi*; but (2) potentially useful as impeachment under Rule 609(a)(1), because it is a "crime of stealth," *Estrada, supra*, 430 F.3d at 621. Burglaries also often involve theft (although it is the act of breaking and entering that constitutes the burglary, a fact of which most lay persons are unaware), and if they do involve theft it makes them more likely to bear on credibility. Again, I have no particulars about this crime, so Plaintiff's counsel may make a proffer out of the hearing of the jury just prior to Bird's testimony. However, I would be quite surprised if asking Bird whether he had been convicted for third degree burglary (and we would

not be discussing the particulars of the burglary in front of the jury – those particulars are only important if Plaintiff wants me to conduct the Rule 609(a)(1) weighing exercise) were so prejudicial as to overcome the presumption that the name of this particular crime and the date of conviction can be used for impeachment.

Vance Jackson:

*First degree burglary, first degree robbery*: Both of these crimes – one of stealth, one of theft – are the kinds of crimes that, while not *crimen falsi* for Rule 609(a)(2) purposes, are generally allowed to be used as impeachment under the Rule 609(a)(1). Plaintiff's counsel may proffer any facts that would tend to show that the prejudice of impeaching with these crimes overcomes the Rule 609(a)(1) presumption, but again – given that impeachment would be limited to eliciting the name of the crime, the date of conviction and the punishment, and would not include any details about the crime – I harbor grave doubt that the presumption of admissibility can be overcome.

*First degree assault*: Assault, like robbery and burglary, is a crime of violence; but unlike robbery and burglary, it does not involve elements of either stealth or theft, which are viewed in common parlance as "dishonest" and so as bearing on credibility. It is the kind of crime specifically identified by the Second Circuit as having little bearing on credibility; and it is the kind of crime that citizens particularly fear and find abhorrent. Accordingly, it may not be used to impeach Jackson.

*Criminal possession of a weapon*: The court will need more facts about this crime in order to assess whether the act of possession involved planning on the part of the defendant or was incidental (the weapon was located in a car and possession was proved under the automobile presumption, for example). We will take this up prior to Jackson's testimony.

Gregory Judge

*First degree manslaughter*: Evidence of this conviction is barred by Rule 609(b), and the prejudice substantially outweighs any minimal probative value, which derives solely from the fact that the crime is serious and not from the nature of the crime (which is at the "low probative value" end of the credibility spectrum announced in *Estrada*). It is barred from use.

*Second degree burglary*: Judge has been found guilty of this crime twice, once for attempted burglary in 1991 and once for burglary in 1994, with his release date for the latter being August 2018. The second instance is presumptively admissible; while a stale crime, it is not "stale" within the meaning of Rule 609(b) because Judge's release date was just 18 months ago. And burglary is one of those non-*crimen falsi* crimes that is highly probative of credibility. There being no indication that the prejudicial value outweighs the probative value for impeachment purposes, it may be used to impeach him.

Judge's first burglary conviction would ordinarily be barred by Rule 609(b), but as the jury will already know that Judge was convicted of second degree burglary (and that he did 25 years for it), the prejudicial value of hearing that he committed the same crime in 1991, and was released after only two years, is actually quite slight, while the fact that he committed burglary twice, not

5

just once, has a great deal of bearing on Judge's credibility. Therefore, it, too, may be used to impeach.

Stacy Liggan

*Attempted criminal possession of a weapon in the third degree*: Liggan's conviction is stale under Rule 609(b) and the probative value of this information for impeachment purposes is minimal – it is not a crime that ranks high on the "impeachment value" spectrum (unlike burglary, see discussion of Gregory Judge, *supra*). That value, such as it is, is outweighed by the prejudice of adding yet another crime to the list of crimes for which he was incarcerated in 2005. It may not be used.

*Attempted robbery in the first degree; attempted robbery in the second degree subd. 1 (aided by another person actually present)*: Robbery being a crime of dishonesty, if not a *crimen falsi*, its probative value for impeachment purposes is high, and is not outweighed by any substantial prejudice. Therefore, these crimes can be used for impeachment purposes.

*Criminal possession of a weapon in the third degree; first degree assault*: These present a much closer question than do the robberies, and the court would want to know considerably more about the facts of these incidents before making a final ruling. In particular, I want to know whether the assault of which Liggan stands convicted took place during one of the robberies/attempted robberies, or whether the weapon was possessed in the course of an armed robbery. If, as I suspect, these charges relate to one or perhaps two incidents of armed robbery, I will permit all of them to be used for impeachment purposes, because the highly violent nature of what are essentially crimes of dishonesty renders them even more probative of credibility than would ordinarily be the case. I recognize that these are precisely the sort of crimes that might inflame a jury, but agree with Defendants that a limiting instruction, not a prohibition on use for impeachment, is the better course of action.

Steven Lovett

*Second degree burglary; first degree robbery*: These are two "stale" crimes that would otherwise be usable under Rule 609(a)(1) because they are crimes of dishonesty and stealth. The crimes are so old – the first conviction took place in 1987 and the defendant was released in 1989; the second conviction in 1990 with a 2000 release – that I will bar their use for impeachment purposes.

*First degree robbery; second degree robbery subd. 2 (physical injury to non-participant or display of gun), 3 (car theft); second degree assault; third degree robbery*: The robberies (which may relate to one, two or three incidents that were covered in a single plea, I do not know) are all fair game for impeachment, given the high probative value under Rule 609(a)(1) of a crime of dishonesty and the lack of any corresponding prejudice to the witness of allowing the jury to know why he was in prison on the day of the death of Karl Taylor. As for the assault, before ruling I want to know whether it was committed during the course of a robbery, and something of the facts about what happened.

6

Silburn Spence

*Criminal Possession of a Weapon; Attempted Criminal possession of a weapon*: These crimes are not particularly probative of credibility (except in the sense that any felony has some impact on credibility), but as Spence was an inmate on the day of Karl Taylor's death, I cannot see that there is enough prejudice to the jury's knowing that he was in jail for gun possession to overcome the presumption that it should be used for cross examination under Rule 609(a)(1).

Malik Thomas

*First degree robbery*: Mr. Thomas has been incarcerated for almost thirty years on a conviction for a single count of first degree robbery. That is quite a feat in and of itself. Robbery falls at the highly probative end of the spectrum in a Rule 609(a)(1) analysis; that said, the prejudicial value of knowing that a defendant is doing a sentence tantamount to a murder sentence for a single robbery is very, very great indeed. We will discuss the facts of Mr. Thomas's case prior to his testimony. Ruling reserved.

Kurtis Williams:

*Second degree burglary; third degree burglary*: Because of the high degree of probative value on the issue of credibility from the crime of burglary, and the lack of any showing of unfair prejudice, these crimes fall within the Rule 609(a)(1) presumption and may be used to impeach.[2]

Plaintiff also urges the court to exclude extrinsic evidence of the inmate witnesses' disciplinary records under Fed. R. Evid. 608(b). Rule 608(b) prohibits the introduction of extrinsic evidence to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. However, on cross-examination, the court may allow inquiry into specific instances if they are probative of the character for truthfulness or untruthfulness of the witness. Since I have no particulars about the witnesses' disciplinary records, I have no idea whether or not any particular incident is highly probative of any witness's credibility as to overcome the presumption of irrelevance. I cannot make a ruling in a vacuum.

*Motion in Limine #3*

In her third motion in limine Plaintiff seeks to exclude evidence about the injuries allegedly suffered by the corrections officers during the incident that led to her decedent's death. The motion

---

[2] The court would appreciate it if, in the future, counsel would give considerably more assistance than was the case with the abbreviated motion and even more perfunctory responses with which I had to work. If either Plaintiff's or the C.O.'s counsel actually read *Estrada*, rather than simply pulling a convenient quotation from the case and throwing it, contextless, into a brief, s/he would have realized that the court is required to undertake a searching inquiry – not make a categorial ruling, as would be the case if only Rule 609(a)(2) were implicated – and should have given the court much more information with which to work.

is denied. The extent of the injuries suffered by COs Tucker and Witte bears on the issue of whether the actions they took to subdue Karl Taylor were reasonable.

*Motion in Limine #4*

Plaintiff's fourth motion in limine seeks to preclude introduction of the fact that a grand jury was empaneled in Sullivan County to look into this incident but returned no true bill as against any of the defendants. The motion is not premature, as the Superintendent Defendants suggest, and it is granted on consent of the C.O. Defendants. The motion seeks no further relief, so there is no basis for granting any further relief.

However, since Defendants' counsel mentioned using grand jury testimony for impeachment: If grand jury testimony is used to impeach on the ground of prior inconsistent statement, the party using it may not refer to it as "grand jury testimony," but must simply say, "Did you testify about this matter on another occasion up in Sullivan County on or about DATE? And in that testimony, were you asked the following question(s), and did you give the following answer(s)?" Then read the questions and answers in the following form: "Question: READ IT/Answer: READ IT."[3]

*Motion in Limine #5*

Plaintiff seeks through her fifth motion in limine to preclude the introduction into evidence of the factual findings and conclusions of bodies other than the Sullivan County Grand Jury that investigated the incident leading to the death of Karl Taylor. The motion is not premature (so much for the Superintendent Defendants' response) and it is granted on consent of the C.O. Defendants. The C.O. Defendants indicate that they "reserve[] their right to use investigative reports for impeachment purposes," but the court will not permit the reports to be used for "impeachment" purposes. Any prior inconsistent statement made by a witness that is contained in an investigative report may be used for impeachment, using the same format described above. The findings and conclusions and the text prepared by the investigative body have no value as impeachment evidence and may not be used for that purpose.

**Conclusion**

This constitutes the decision and order of the court. It is a written opinion. The Clerk is directed to remove the following motions from the court's list of open motions: Docket ## 343, 346, 349, 351, and 353

Dated: January 22, 2020

---

[3] Please note the format for impeaching a witness with a prior inconsistent statement. No other format is permissible in my courtroom. It is the one taught in law school. It is surprising how few lawyers are familiar with it.

_____

Chief Judge

BY ECF TO ALL COUNSEL